Rec'd by Court
10/14/05 MM
Rec'd by
10/23/05
Resubmitted
10/23/05

FILED
OCT - 7 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED
SEP 3 0 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

KENNETH RAY SANDERS, #243923
PETITIONER,
1701 E STREET, S.E.
W.D.C.   VS.   20003

U.S. PAROLE COMMISSION,
FEDERAL BUREAU OF PRISONS,
C.S.O.S.A. INC. ET. AL.,
RESPONDENTS.

CASE NUMBER   1:05CV02003

JUDGE: Richard W. Roberts

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 10/__/2005

## MOTION UNDER TITLE 28 U.S.C. 2241
## FOR WRIT OF HABEAS CORPUS

Comes Now, Petitioner, Kenneth Ray Sanders, Pro Se', moving this honorable court to grant his Motion for a Writ of Habeas Corpus to address the deprivation of his lawful right to liberty, which is due to acts and ommissions by the Respondents in the miscalculation of his Statutory Good Time, Parole Violator Term, and failing to apply the proper credits towards the service of his sentence as required by Title 28 C.F.R., section 2.52, pursuant to Acts of Congress and in violation of the Constitution and the laws of the United States. In support of this motion, Petitioner states the following:

1. After having been convicted and sentenced in 1989 in the Superior Court of the District of Columbia of three counts of Burglary II, Petitioner received consecutive sentences of 2 to 6 years, 1 to 3 years, and 1 to 3 years, with concurrent subsequent sentences of 1 year on each predicate offense. Petitioner was remanded to the custody of the D.C. Department of Corrections to serve his sentences. Upon Petitioners transfer to the institution, Petitioners sentences were aggregated by the institution giving him a sentence structure of 4 to 12 years of imprisonment. Meaning that Petitioner was to serve a maximum term of 12 years with parole eligibility after the service of 1/3 of the sentence of 12 years.

2. However; At the time of Petitioners offense and conviction, District of Columbia statute provided that D.C. Code violators receive 35% Statutory Good Time credit towards their total sentences, which meant that the inmates sentence was automatically reduced, reflecting the 35% reduction. This meant that D.C. Code violators were only required to serve a maximum of 65% of their sentences. Statutory Good Time was given as a projected figure that changed an inmates sentence and would remain, providing that the inmate did not have any of his good time revoked or forfeited as the result of that inmate receiving such forfeiture or revocation for violating rules and regulations of the institution. In Petitioners' case, he received a total of 4 years, 2 months, and 24 days in Statutory Good Time credits, which meant that Petitioner only had to serve a total of 7 years, 9 months, and 6 days of the original sentence.

3. Prior to any Good Time forfeiture or revocation, a formal hearing must be convened where

1

the prison adjustment board must provide protection of the inmates rights to due process, as the state, in instituting statutory good time, created a liberty interest. That interest being protected by the 14th Amendment.It is held that "For the State having created the right to good time and itself recognizing that it's deprivation is a sanction authorized for major misconduct, the prisoners' interest has real substance and is sufficently embraced by the 14th Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated". This was decided in *Wolff v. McDonnell* and other precedents such *Morrissey v. Brewer and Gagnon v. Scarpelli.*Wolff also held that "where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment, thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily" *Wolff v. McDonnell, 418 U.S. 539 (1974). Morrissey* held that due process imposed certain minimum procedural requirements which must be satisfied before parole could finally be revoked. These procedures were: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."*Morrissey v. Brewer, 408 U.S., at 489. Wolff v. McDonnell, 418 U.S. 539, 559 (1974)*

4. *Wolff* also held that: "Where a disciplinary hearing may result in the loss of good time credits the inmate must receive; (1) Advance written notice of the disciplinary charges; (2) An opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) A written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *(418 U.S. at 563-567)* To date, Petitioner has never been informed that any of his Statutory Good Time Credits were to be revoked or forfeited. Nor has any formal hearing been convened to address any such forfeiture or revocation. Therefore; Petitioners' Statutory Good Time remains intact due to the fact that, if he did commit such an infraction which could affect his Statutory Good Time, he was never informedof it, and no hearing was convened to address any issues that may call for the forfeiture of any of Petitoners' credits. Any forfeitures were thus done arbitrarily and in violation of the Due Process Clause.

5. The following dates and figures reflect all of the jail time served for the initial term of imprisonment and subsequent terms served as sanctions for the violation of his conditions of parole:

| Dates and Periods | Years | Months | Days |
|---|---|---|---|
| A. Dec. 18, 1989-Aug. 21, 1993 = | 3 | 8 | 3 |
| B. Oct. 21, 1994-Mar. 17, 1997 = | 2 | 4 | 26 |
| C. May 21, 1999- Oct. 24, 2000 = | 1 | 5 | 1 |
| D. Dec. 8, 2001-May 8, 2003 = | 1 | 5 | 0 |
| E. Feb. 8, 2004-Oct. 8, 2004 = | 0 | 8 | 0 |
| Raw Totals = | 7 | 30 | 30 |
| Converted Totals = | 9 | 6 | 30 |

6. As evidenced in the above figures and information, Petitioners maximum term of imprisonement, less Statutory Good Time, has expired and Petitioner has been denied due process and deprived of his lawful liberty for approximately 1 year, 7 months, and 24 days. These figures only reflect one area where Petitioner was deprived his rights.

7. The miscalculation and incorrect application of Petitioners' Statutory Good Time reflects only deprivations regarding Statutory Good Time. Petitioner has also been denied his lawful liberty as a result of miscalculation and denial of other periods of time that should have been credited towards Petitioners' sentence, pursuant to **Title 28 CFR 2.52.**

8. The District of Columbias' Revitalization Act brought about certain changes that affected Petitioner and other D.C. Code violators regarding parole matters. All parole matters were transferred to the U.S. Parole Commission, to wit the Commission, from the D.C. Board of Parole, to wit the Board, as the Board was phased out. Thus; D.C. Code violators and parolees, in accordance with **Title 18 USC 3522(b)**, which states: **(c)** The United States Parole Commission and the Chairman of the Commission shall have the same powers and duties with respect to a probationer or parolee transferred from State supervision pursuant to this section as they have with respect to an offender convicted in a court of the United States and paroled under chapter 3111 of this title. The provisions of sections 4201 through 4204, 4205(a), (e), and (h), 4206 through 4215, and 4218¶ of this title shall apply following a revocation of probation or parole under this section, were under new laws. This "Act", according to the language suggested, would serve to affect D.C. Code Violators retroactively, as if they were convicted during the time of the actual offense. In this case; In December of 1989, when Petitioner caught the charge. Simply put; D.C. Code violators and parolees became subject to federal statutes, regulations, guidelines, and practices eventhough the crimes they committed and received punishment for, were under the jurisdiction of the D.C. Superior Court, for the violation of laws of the District of Columbia. This brought about various changes and difficulties for D.C. Code violators and parolees whose crimes, convictions and terms of parole took place prior to the proverbial "changing of the guard"

9. In the Sentencing Reform Act of 1984, section 212(a)(2), 98 Stat. 1999, Congress eliminated most forms of parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission. *See Gozlon-Peretz v. United States, 498 U.S. 395, 400-401(1991)* Keep in mind that "Supervised Release" **(1)** Was a term of monitoring imposed by the sentencing court **only**, **(2)** followed the term of imprisonment for which the individual was sentenced, **(3)** Was overseen by the sentencing court only, and **(4)** could not be revoked, altered, or reinstituted, unless done so by the sentencing court. Whereas; D.C. Code Violators, who were paroled for good conduct while incarcerated, received parole as the result of maintaining good conduct within the institution, and such was also a continuance of the original sentence which, as imposed by the sentencing court, was not to exceed the original maximum term, less statutory Good Time Credits, providing those credits were not revoked of forfeited for infractions of prison rules or regulations. Parole was simply service of the original sentence, outside the institution, and was contingent upon maintaining good conduct while on parole.

10. Petitioner has had his parole revoked for several violations of "failure to report" and was not credited the time spent on parole that he should have been when **Title 28 C.F.R. sec. 2.52** ( )( ) distinctly provides that an individual that has his parole violated for "failure or refusal to report" "shall be credited for the time spent on parole, up until the time that he

fails or refuses to report". At no time, other than when Petitioners' parole was violated for failure to report and a new crime in 2003, receiving a menial charge for panhandling, did the Commission or the Board violate Petitioner for any new criminal conduct. The following figures reflect periods of time Petitioner should have been credited that were spent on parole, prior to failing or refusing to report, as charged by both the Board and the Commission:

| Dates & Periods | Years | Months | Days |
|---|---|---|---|
| Aug. 21, 1993-Jul. 21, 1994 = | 0 | 11 | 0 |
| Mar. 17, 1997-Nov. 18, 1998 = | 1 | 8 | 0 |
| May 8, 2003-Dec. 9, 2003 = | 0 | 7 | 1 |
| Raw Totals = | 1 | 26 | 1 |
| Converted Totals = | 3 | 2 | 1 |

11. The figures above represent the periods reparole began and ended as a result of Petitioner vioalting conditions of his parole for failing to report as instructed. On each occasion the Board or the Commission apparently chose to ignore any other conduct, charging only for the failures to report. Therefore, Petitioner was further deprived his lawful liberty as a result of being denied the 3 years, 2 months, and 1 day worth of credits towards his sentence, in accordance with what is prescribed in **Title 28 C.F.R. sec. 2.52( )( )** for situations that met that criteria. Hypothetically speaking; If you discounted Petitioners' Statutory Good Time, his sentence would still have expired, as the total time here would amount to 12 years, 9 months to date.

12. Petitioner served three subsequent terms of imprisonment which brought about the violation of his parole that, except where the Commission credited 14 months of time served in Arlington County in accordance with **28 C.F.R.sec. 2.52(c)(2) (1976)**, by applying the time served in Arlington as credit for time to be served for the violation, with the complete amount of time to be sanctioned for the violation, to receive the total amount to be served for the violation, per the guidelines, which amounted to a total of 17 months. The other periods were not credited which was contrary to said subsection. The following dates and figures represent the periods where Petitioner was denied other periods of creditable time following the service of those periods in jail on subsequent convictions:

| Dates & Periods | Years | Months | Days |
|---|---|---|---|
| Jul. 21, 1994-Oct. 21, 1994 = | 0 | 3 | 0 |
| Nov. 18, 1998-May, 21, 1999 = | 0 | 6 | 0 |
| Total = | **0** | **9** | **0** |

13. Using the figures for time served in jail, time on parole, and time on subsequent charges that should have been credited, Petitioner has served approximately **13 years, 6 months**. Using these figures, it is clear that Petitioner has actually served approximately **5 years, 6 months, and 6 days** more time, both in prison and on parole, than he should have.

14. When the Board was phased out, the Federal Bureau of Prisons assumed receivership of D.C. Code Violators and offenders, and the Commission assumed responsibility for D.C. Code violators regarding, *inter alia*, the granting and revoking of parole; The laws that previously affected D.C. Code violators were replaced by federal statutes, laws, and regulations that changed also the punishment for D.C. Code parole violators. Now the punishment, on a case by case basis, is often greater than the punishment previously meted

out by the Board. Those changes were also applied to the D.C.Code violator retroactively, violating the **ExPost Facto Clause.**

15. The heart of the **ExPost Facto Clause, U.S. Const., Art 1, sec. 9,** bars application of a law "that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed.." See *Calder v. Bull, 3 Dall. 386 390(1798)(emphasis added)*

16. The laws that now affect offenders that were convicted and sentenced prior to the changes were applied retroactively causing the remaining sentences of each individual whose parole was revoked to be lengthened by the forfeiting of said parolees' time spent on parole and applying that time back to the sentence. This was not the case when the Board was still in power. Then, the offenders parole was revoked, and in most cases he was returned to prison to serve out part, or all of the remaining sentence. However, at no time was any of the parolees' time spent on parole (street time) forfeited for the violations committed, thus keeping his sentence intact and in accordance with how the sentencing court meant for his sentence to be served, time wise.

17. The Commission does not, by virtue of *Title 18 U.S.C.sec. 3583(e)(3), or (h)* of *the Violent Crime Control Act,* nor *the Sentencing Reform Act of 1984, Sub. sect. 212(a)(2), 98 Stat. 1999,* have the authority to forfeit or revoke a parolees' street time because Congress delegated that authority and power specifically to the sentencing courts, and only in regards to violations of offenders on "Supervised Release". Petitioner was not a federal statute violator when convicted, sentenced, and initially paroled. Nor was he ever sentenced to a term of Supervised Release. The federal statutes regarding such practices should not have been applied to individuals whose sentences and parole were in effect prior to the transferring of parole matters from the Board to the Commission. Doing so, violated the **ExPost Facto Clause.**

18. Petitioner has had his time on parole and term of parole affected when the new regime began the taking over of parole matters for D.C. Code violators. This was done when all of Petitioners' street time, prior to the transfer, was retroactively forfeited or revoked, particularly between August 1993 and July 1994. It is a fact that the laws, statutes, and regulations, under which Petitioner was not initially subjected to, served to change the overall punishment, and the regulations and guidelines that were in effect before the Commission assumed authority, subsequently making him subject to new laws and stiffer penalties, further violating *ExPost Facto Law*.

19. When D.C. Code violators whose crimes were committed, sentences were imposed, and parole took effect prior to the new and different laws being enacted, came under the auspice of the Commission, all matters of parole, especially dealing with violations and revocations, were subjected to statutes, laws, regulations, and practices which were set in place for offenders that were convicted, and whose sentences were imposed in a United States Court, per **Title 18 U.S.C., sec. 3522**; The Commission, entitling the **"parole"** of D.C. Code offenders **"Supervised Release"** when it was not the case, used an inaccurate term to forfeit all of the time spent on parole, made such forfeitures retroactive, and reconfigured the offenders remaining term of parole to reflect the amount of time left on that sentence the offender had remaining on his term, prior to release on parole and the subsequent violation (s) taking place. For instance: If an offender who was paroled and was to serve a remaining 10 years of his original sentence on parole spends 9 1/2 years on parole before committing a violation that results in a parole revocation, all of the 9 1/2 years spent on parole is automatically forfeited and the term remaining will reflect the reattaching of that 9 1/2

years, giving the "parolee" a new 10 year term to serve, in jail, or on parole, whether it was one or several violations resulting in revocations, during any particular period.

20. It is unfathomable that Congress, upon deciding and passing new laws in regards to crimes, prisons and parole, could possibly have intended that any of the laws should be interpreted to infer that such laws could, or should be used as tools in the deprivation of credit for time spent on parole, where clear conduct was observed and demonstrated, prior to, and up until, violations of that parole. Doing so would only lead to disparagements of the individuals right to liberty after serving his time and paying his debt to society by instituting the new laws, a vioaltion of the 9th Amendment of The Constitution. The framers of the United States Constitution never intended such a thing, as it would be plausible to conclude that an offender would never be released from his commitment. It is only right and just that persons, even without the laws governing good time credits and any other state instituted credits, be granted their rights to full liberty after the elapse of the time frame meant to be served when the courts impose their sentences. In other words; the sentencing courts intended that an offender be held accountable for his crimes over a specific period of time, which should not be interrupted. At no time does the sentencing court expect or condone the taking or forfeiting of any period of previously elapsed time that serves to lengthen or extend the offenders original term of imprisonment. Service of a sentence, according to the intentions and expectations of the courts, are to commence upon the day the sentence begins and end no later than the date of completion of the span of time imposed being served uninterrupted.

21. In saying this; Petitioner contends that since the courts decide a sentence and term of imprisonment to be served, without interruption, any other entity who so chooses to institute any laws that would serve to shorten an individuals sentence, does so with the understanding that, while it is acceptable to shorten a sentence for whatever reason deemed, an extension of that sentence, causing it to hold an offender longer than the prescribed and intended length of time, does so in violation and deprivation of that individuals rights under The United States Constitution.

**Wherefore;** Petitioner moves this honorable court to grant his Motion for a Writ of Habeas Corpus to address the allegations made by him regarding his unlawful detention and deprivation of his lawful right to liberty. In furtherance; Petitioner invoking **Rule 62 Fed. R. Civ. P.** also moves this honorable court to issue an injunction ordering the Respondents to cease and desist any and all operations and actions regarding Petitioner, to wit, any hearing on matters of parole, any previously issued warrants for alleged violations, or anything else the court deem appropriate, pending ruling and decision on the merits of the Writ of Habeas Corpus. If the court finds for, and rules in favor of the Petitioner; Petitioner moves this honorable court to issue declaratory judgment against the Respondents for their pratices, making them illegal, as they are, order his immediate release regarding the matter for which he is on parole and addresses in this action, causing no further action to take place regarding this matter.

**Special Note:** The dates that are reflected in this "Motion" are accurate to within 3-5 days. The periods where Petitioner "failed or refused to report" may overlap the beginning periods of subsequent incarceration by 3-7days. Nevertheless; the dates when made accurate will still reflect that Petitioners' sentence has long expired and he is being unlawfully denied his right to lawful liberty. The Respondents records pertaining to Petitioner will support and prove his allegations.

Respectfully Submitted,

Kenneth Ray Sanders, Pro Se'
Petitioner

## CERTIFICATE OF SERVICE

I, Kenneth Ray Sanders, do certify that a true and exact copy of this Motion For Writ of Habeas Corpus was mailed, via prepaid U.S. Postage, to the legal departments of The Federal Bureau Of Prisons, 320 First Street NW, Washington, D.C. 20534, The United States Parole Commission, 5550 Friendship Boulevard, Bethesda, MD 20764, and The Court Services and Offender Supervision Agency of Washington, D.C., 601 Indiana Avenue NW, Washington, D.C. 20001, on the _10_ day of _June_ 2005.

Respectfully Submitted,

Kenneth Ray Sanders, Pro Se'
Petitioner

RECEIVED