UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH RAY SANDERS,** : | |
| Petitioner : | Civil Action No. 05-02003 (RWR) |
| : | |
| v. : | |
| : | |
| **U.S. PAROLE COMMISSION,** : | |
| **FEDERAL BUREAU OF PRISONS, et. al,** : | |
| Respondents : | |

### FEDERAL RESPONDENTS' OPPOSITION TO PETITIONER'S
### PETITION FOR WRIT OF HABEAS CORPUS

The federal respondents, by and through their attorney, the United States Attorney for the District of Columbia, hereby respectfully file their opposition to the petitioner's petition for a writ of habeas corpus. As grounds to support his petition, the petitioner claims that he has served his sentence in full because the good time credits that he earned prior to his parole revocations should not have been forfeited and should be applied to reduce his sentence. Furthermore, the petitioner claims that the U.S. Parole Commission has improperly forfeited the time he spent on parole, known as street time. Because the petitioner's good time credits did not reduce the petitioner's sentence and were properly forfeited upon his parole revocations, because the District of Columbia Court of Appeals has decided the issue concerning the forfeiture of street time raised by the petitioner squarely in favor of the position of the U.S. Parole Commission, and because the petitioner has been given sentence credit for all the time he spent in custody serving his parole violator term, the petitioner's petition should be summarily denied.

## PROCEDURAL HISTORY

The petitioner, Kenneth Sanders, is currently serving a D.C. parole violator term, originally imposed as an aggregate 12 year maximum term of imprisonment for his convictions for second degree burglary, attempted first degree theft, and destruction of property in Superior Court Case No. F-14226-89. See Exhibit A (Sentence Monitoring Computation Data) and Exhibit B (Judgment and Commitment Order F14226-89). The petitioner was first released to parole supervision in the District of Columbia on August 18, 1993, with a full term sentence expiration date of December 18, 2001. See Exhibit C (Certificate of Parole). On August 1, 1994, the D.C. Board of Parole issued a parole violator warrant for the petitioner's arrest, charging him with failure to report as directed and use of illegal drugs. See Exhibit D (Warrant and Report of Alleged Violations). The parole violator warrant was executed on October 31, 1994. See Exhibit D at p. 2. The D.C. Board of Parole revoked the petitioner's parole for these non-criminal violations on February 1, 1995 and ordered that he be reparoled on or after July 31, 1995. See Exhibit E (Notice of Board Order).

On December 26, 1995, the D.C. Board of Parole rescinded the previously granted reparole date because the petitioner had engaged in negative institutional conduct. See Exhibit F (Notice of Board Order). The petitioner was paroled for the second time into the community on March 18, 1997, and was to remain under parole supervision until March 21, 2002. See Exhibit G (Certificate of Parole). On October 21, 1998, the D.C. Board of Parole issued another parole violator warrant charging that the petitioner failed to report to his parole officer for several months. See Exhibit H (Notice of Board Order and Warrant). The warrant was executed on March 11, 1999. See Exhibit H at p. 4. The D.C. Board of Parole revoked the petitioner's parole

on April 7, 1999 for various parole violations and ordered that he be considered for reparole by September 11, 1999. See Exhibit I (Notice of Board Order).

On August 5, 1998, the U.S. Parole Commission assumed the parole decision making responsibility for all D.C. parole eligible prisoners pursuant to D.C. Code § 24-131. The petitioner appeared before a U.S. Parole Commission hearing examiner for his rehearing on February 3, 2000. See Exhibit J (D.C. Rehearing Following D.C. Revocation Hearing Summary). Following this hearing, the Commission ordered that the petitioner be released on parole on August 10, 2000, after service of 17 months. See Exhibit K (Notice of Action). Prior to the petitioner's impending release, he failed to develop a suitable release plan, and the Commission retarded his parole and ordered him to reside in a community corrections center after his official release on parole. See Exhibit L (Notice of Action). The petitioner was officially released on parole October 19, 2000, with a re-calculated full term sentence date of February 22, 2005. See Exhibit M (Certificate of Parole).[1]

After his release, the petitioner again violated the conditions of his parole, and the Commission issued another parole violator warrant for his arrest on May 9, 2002. See Exhibit N (Memorandum, Warrant, Warrant Application). The Commission's warrant was lodged as a detainer on May 15, 2002 because the petitioner had been arrested in Arlington, Virginia for a local criminal offense. See Exhibit O (Letter dated 5/17/02 and Memorandum dated 5/15/02). On July 17, 2002, the Commission learned that the petitioner had been arrested on December 8, 2001 and convicted on March 4, 2002 of felony concealment in Arlington, Virginia. The

---

[1]The petitioner's full term date had been recalculated to reflect the loss of credit for the time he had spent on his previous periods of parole release ("street time").

3

petitioner was sentenced on March 18, 2002 to 4 years, all but 12 months suspended, to be followed by 4 years probation. The Commission promptly supplemented its warrant to reflect the updated criminal conviction. See Exhibit P (Letter dated 7/16/02) and Exhibit Q (Memorandum and Warrant Supplement). After the petitioner had completed his intervening local sentence in Virginia, the Commission's parole violator warrant was executed on November 23, 2002. See Exhibit N at p. 3.

The petitioner received a parole revocation hearing with the Commission on February 25, 2003. See Exhibit R (Revocation Hearing Summary). Following this hearing, the Commission revoked the petitioner's parole for his administrative violations and his conviction in Arlington, Virginia, and the Commission ordered that he serve an additional 17 months in custody. See Exhibit S (Notice of Action). The Commission also officially notified the petitioner that he would receive no sentence credit for the time he had spent on parole. Id.

The petitioner was next released into the community on parole on May 8, 2003, with a new full term sentence of July 11, 2007. See Exhibit T (Memorandum and Certificate of Parole).[2] On January 8, 2004, the Commission issued another parole violator warrant for the petitioner's arrest for failing to report to his supervision officer and violating the law by committing the offense of aggressive panhandling on December 19, 2003; the warrant was executed on February 9, 2004. See Exhibit U (Memorandum, Warrant, Warrant Application). The Commission offered the petitioner an "expedited revocation," whereby he would waive an in-person hearing and accept the Commission's revocation decision on the record. On March 19,

---

[2]The new expiration date reflected the forfeiture of street time that occurred as a result of petitioner's parole revocation.

2004, the petitioner officially accepted the Commission proposal. See Exhibit V (Memorandum Re Expedited Revocation Procedure). The terms of the agreement included revocation of the petitioner's parole, forfeiture of the time he had spent in the community, and a reparole on October 9, 2004, after the service of 8 months. Id. at p. 6. The Commission memorialized the agreement in a notice of action on March 29, 2004. See Exhibit W (Notice of Action).

The petitioner was released pursuant to the expedited revocation agreement on October 9, 2004, with a new full term expiration date of April 12, 2008. See Exhibit X (Memorandum and Certificate of Parole). However, on January 7, 2005, the Commission issued another parole violator warrant for his arrest for failure to submit to drug testing, failure to comply with conditions for drug treatment, and failure to report to his supervision officer; the warrant was executed on July 13, 2005. See Exhibit Y (Memorandum, Warrant, Warrant Application). On September 8, 2005, the Commission offered the petitioner another expedited revocation proposal which included revocation of parole, forfeiture of "street time," and presumptive parole on July 12, 2006, after 12 months. See Exhibit Z (Letter dated 9/8/05, Expedited Revocation Proposal). The petitioner accepted the terms of the expedited revocation proposal. Id. at p. 6. On September 12, 2005, the Commission issued an official notice of action ordering the agreed upon terms of the expedited revocation. See Exhibit AA (Notice of Action). The petitioner is currently serving his sentence with a re-calculated full term date of January 14, 2009. See Exhibit A at p. 2.

The petitioner mailed his petition for a writ of habeas corpus on June 10, 2005 and was filed on October 7, 2005.[3]

---

[3]Since the filing of the petitioner's habeas petition, the petitioner has been transferred to the Rivers Correctional Institution in Winton, North Carolina, where the warden is George Snyder. At the time that the petitioner filed his petition, however, he was an inmate at the D.C.

**ARGUMENT**

I.  **Earning of Good Time Credits Does Not Reduce the Petitioner's Sentence or His Full Term Date**

The petitioner argues that his sentence has been reduced by the institutional good time credits that he has earned while serving his sentence. The petitioner's argument is without merit for the following reasons. By arguing that his good time credits should be applied to shorten his full-term date, the petitioner fundamentally misunderstands the function of these credits. It is well settled law that good time credits, such as those governed by the D.C. Good Time Credit Act of 1986, D.C. Code § 24-201.29 (formerly § 24-428), do not reduce the full term date of the

---

Jail, where his custodian was D.C. Jail Warden Dennis Harrison. Warden Harrison is within this Court's jurisdiction and because the Court had jurisdiction over the petitioner's custodian when the petitioner filed his petition, this Court retains jurisdiction despite the petitioner's subsequent transfer. See Rumsfeld v. Padilla, 124 S.Ct. 2711, 2720 (2004) (if district court had jurisdiction over petitioner's custodian when petitioner filed petition, court maintains jurisdiction if petitioner thereafter is transferred to another jurisdiction); Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir.)(same), cert. denied, 125 S.Ct. 448 (2004). Nonetheless, the Court should strike respondents named in the body of the petitioner's writ, and substitute Warden George Snyder as the respondent to comply with the requirements of 28 U.S.C. § 2243 ("The writ or order to show cause shall be directed to the person having custody of the person detained").

Finally, we note that the only appropriate respondent with regard to the petitioner's claims is Warden Snyder. The U.S. Parole Commission ("the Commission") is not the "person having custody of the person detained," as required by 28 U.S.C. § 2243, and the Court should therefore dismiss the Commission as a party. See Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998) ("When a prisoner seeks to challenge parole-related decisions, the warden of the prison and not the U.S. Parole Commission is the prisoner's 'custodian.'"); Guerra v. Meese, 786 F.2d 414, 416 (D.C. Cir. 1986) (holding that "for purposes of challenging a Parole Commission action on the sentence a prisoner is currently serving in a federal penal facility, the warden of that facility is the prisoner's custodian within the meaning of 28 U.S.C. §§ 2241-2243") (citations omitted); Rumsfeld, supra, 124 S.Ct. at 2718 ("longstanding practice confirms that in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official") (citations omitted).

sentence.[4]  Rather, they only set the mandatory release date if the prisoner has not been previously paroled. Good time credits are "applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory." D.C. Code § 24-201.29 (formerly § 24-428(b)).  Thus, these good time credits essentially affect either when a prisoner becomes eligible for release on parole or when he must be released on parole.

Moreover, it is clear, however, that once a prisoner is released on parole, good time credits do not apply to shorten his full-term date.  D.C. Code § 24-404 states:

> While on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or his authorized representative until the expiration of the maximum of the term or terms specified in his sentence <u>without regard to good time allowance</u>.

D.C. Code § 24-404 (emphasis added).

In addition, the U.S. Parole Commission has promulgated a regulation governing D.C. Code offenders which provides as follows:

> Any prisoner having served his or her term or terms less deduction for good time shall, upon release, be deemed to be released on parole <u>until the expiration of the maximum term or terms for which he or she was sentenced</u>, except that if the offense of conviction was committed before April 11, 1987, such expiration date shall be less one hundred eighty (180) days. Every provision of these rules relating to an individual on parole shall be deemed to include individuals on mandatory release.

28 C.F.R. § 2.87(b) (emphasis added). Thus, contrary to the petitioner's claim, his good time credits has no effect on the length of his sentence and does not shorten the sentence originally

---

[4]The Good Time Credit Act was repealed on August 20, 1994 but is applicable to the petitioner's sentence.

imposed by the court.

The petitioner appears to further claim that he has served his sentence through the accumulation of his good time credits. Once again, the petitioner misunderstands the application of good time credits. If parole is revoked, the prisoner serves the balance of the original sentence less any good time credit "which may be earned by him <u>after</u> his return to custody." See D.C. Code § 24-406(a) (emphasis added). Thus, the petitioner is not entitled to any good time credit earned prior to his last release on parole.

The Good Times Credit Act, now codified at D.C. Code § 24-201.29 (formerly § 24-428), provided that, upon a prisoner's initial incarceration, good time credits shall be calculated "solely on the basis of the maximum term of imprisonment." However, where, as here, an order of parole has been revoked, § 24-201.29 yielded to D.C. Code § 24-406, which governs the computation of good time credits on the sentence remaining after the revocation of parole. Section 24-406 dictates that a prisoner whose parole has been revoked must (unless subsequently re-paroled):

> serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him <u>after his return to custody</u>. For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered a new sentence. (Emphasis added).

The plain language of the statute, therefore, requires that the good time credits for the petitioner's original sentence be calculated on the basis of the sentence remaining after the revocation of his parole, reduced only by institutional good time credit earned <u>after</u> his return to custody. Accordingly, the petitioner's good time credits previously earned were properly forfeited upon his prior parole revocation.

Moreover, there is an extensive body of case law that supports the forfeiture of the good

time credits in this case. Indeed, in Jones v. Clemmer, 163 F.2d 852 (D.C. Cir. 1947), the Court of Appeals rejected the contention that a prisoner had achieved commutation of his sentence through good time credits earned before and during parole, stating that "any right to commutation" which the prisoner had previously earned (prior to revocation of his parole and resumption of his sentence) "was forfeited by his violation of parole." Id. at 853; see also Bates v. Rivers, 323 F.2d 311, 312 (D.C. Cir. 1963) (citing Jones). Likewise, the Fourth Circuit Court of Appeals, relying on District of Columbia law, has held that a prisoner's release based on good time credits, "as in the case of parole, is conditioned on good behavior," and may be "forfeited for breach of condition." Hall v. Welch, 185 F.2d 525, 526 (4th Cir. 1950) (citing Bragg v. Huff, 118 F.2d 1006 (4th Cir. 1941)). Moreover, in U.S. Parole Commission v. Noble, 693 A.2d 1084 (D.C. 1997), the D.C. Court of Appeals explicitly noted that the City Council had originally included a provision in the Good Times Credit Act which stated that a revoked parolee would not forfeit any good time credits earned prior to his revocation, but deleted this provision from the final version of the bill, so that re-incarcerated parolees could earn good time credits solely on the basis of the balance of the sentence after revocation of parole. Id. at 1091-92 & n.12; see also Teachey v. Carver, 736 A.2d 998, 1006 n.12 (D.C. 1999) (noting that where defendant had violated parole, he had "no valid claim for restoration of good time credits").

It also should be noted that federal courts have interpreted the analogous federal statutory provisions, 18 U.S.C. § 4161 and 4165 (repealed effective November 1, 1987), in the same manner.[5] Indeed, in Mock v. U.S. Board of Parole, 345 F.2d 737, 738 (D.C. Cir. 1965), the

---

[5] 18 U.S.C. § 4161 states that a "prisoner convicted of an offense against the United States" and sentenced to a definite term of imprisonment other than life, "whose record shows that he has faithfully observed all the rules and has not been subjected to punishment," is entitled

Court rejected the petitioner's contention that his good time credits under § 4161 could not be revoked because of a parole violation. This ruling is consistent with the rulings made by the other federal circuit courts that have considered the matter. See, e.g., Patterson v. Knowles, 162 F.3d 574, 576 (10th Cir. 1998) (petitioner not entitled to reduction in parole violator term based upon "the good time he accumulated prior to his release on parole"); Booth v. United States, 996 F.2d 1171, 1173 (11th Cir. 1993) (good time credits are "used up" upon release from parole and unavailable to reduce term received for parole violation); Boniface v. Carlson, 881 F.2d 669, 671 (9th Cir. 1989) (good time credits do not survive release upon parole and cannot be credited toward a parole violator's sentence); Miller v. Hadden, 811 F.2d 743, 744-46 (2nd Cir. 1987) (finding that the federal good time credit statute, 18 U.S.C. § 4161, provides that good time is not a vested right and that a prisoner's good time credits may be forfeited upon the revocation of parole); Culp v. Keohane, 822 F.2d 641, 642 (6th Cir. 1987) (holding that "[o]nce a prisoner's release is revoked because of his violation of parole conditions, the Parole Commission has the authority to forfeit good time credits"); Ray v. Brewer, 808 F.2d 19, 21-22 (7th Cir. 1986) (upholding the U.S. Parole Commission's regulation prohibiting use of pre-parole good time credits to be applied after parole is revoked); Swicegood v. U.S. Parole Commission, 755 F.2d 880, 881 (11th Cir. 1985) (holding the BOP's failure to timely aggregate prisoner's sentence, thereby causing him to lose good time credits, to be immaterial because prisoner "forfeited any

---

to five days' good time credit per month "if the sentence is not less than six months and not more than one year."

18 U.S.C. § 4165 provides that "[i]f during the term of imprisonment a prisoner commits any offense or violates the rules of the institution, all or any part of his earned good time may be forfeited."

good time credit for time served prior to [parole] revocation" when he violated the conditions of his parole); Davis v. Attorney General, 425 F.2d 238, 239-40 (5th Cir. 1970) (prisoner's 1,328 days of earned good time credit were properly forfeited when his mandatory release was revoked). Given that his parole has been revoked, the petitioner is not entitled to any of the good time credits earned prior to his latest parole revocation.

Accordingly, because the petitioner's good time credits did not reduce his sentence and were properly forfeited upon his revocations of parole, the petitioner's challenge to the calculation of his full term sentence on this basis should be denied.

**II.     Petitioner's Time on Parole Was Properly Forfeited Upon Revocation**

The petitioner also argues that, when his parole was previously revoked, the U.S. Parole Commission was barred from forfeiting the time he had spent on parole, i.e., his street time. The petitioner claims that the forfeiture of his street time by the U.S. Parole Commission has resulted in the full term date of his original sentence being impermissibly extended beyond the full term date he was given when he was originally released on parole. Therefore, the petitioner argues that he is being unlawfully detained beyond the expiration of his sentence.

The petitioner's argument has no merit. The law is clear that, upon revocation of parole, none of the time that a prisoner has previously spent on parole in the past can be credited to the service of his sentence, and that street time is properly forfeited. See D.C. Code § 24-406(a) (when parole is revoked, none of the time spent under parole supervision will be credited toward the sentence); United States Parole Comm'n. v. Noble, 693 A.2d 1084, 1085 (D.C. 1997), op. adopted, 711 A.2d 85 (D.C. 1998) (en banc) (D.C. Code § 24-406 requires automatic forfeiture of street time after revocation of parole); see also Jones v. Bureau of Prisons, 2002 WL

31189792 (D.C. Cir. October 2, 2002) (appellant cannot receive credit for "street time" after his parole is revoked); Redrick v. Williamson, 2005 WL 1155041, *3 (M.D. Pa. May 4, 2005) (D.C. offenders cannot receive credit for "street time" after parole is revoked); McQueen v. U.S. Parole Comm'n., 2005 WL 913151, *2 (D.D.C. April 19, 2005) (same); Simmons v. U. S. Parole Comm'n., 2005 WL 758268, *2 (D.D.C. April 1, 2005) (same); McRae v. D.C. Parole Board, 2002 WL 32388337, *2 (E.D. Va May 13, 2002) (same). Thus, the U.S. Parole Commission correctly forfeited all of the time the petitioner spent on parole supervision upon the revocation of his parole, which resulted in his current projected full term date of January 14, 2009.

The petitioner further argues that the forfeiture of his street time violates the Ex Post Facto and Due Process clauses of the Constitution. However, the District of Columbia Court of Appeals has ruled squarely that the forfeiture of street time does "not violate the Ex Post Facto or Due Process Clauses" of the Constitution. Davis v. Moore, 772 A.2d 204, 209 (D.C. 2001) (en banc); see also Jones, supra, 2002 WL 31189792 at *1 (no Ex Post Facto violation when sentence was recalculated to exclude any credit previously given for street time); Wade v. Figueroa, 2005 WL 607974, at *2 (D.D.C. March 15, 2005) (same); Redrick v. Williamson, supra, 2005 WL 1155041, *4 (forfeiture of "street time" for D.C. offenders does not violate Ex Post Facto or Due Process clauses); McRae v. D.C. Parole Board, supra, 2002 WL 32388337, at *2-3 (same).

The petitioner also claims that the time he spent on parole ("street time") cannot be forfeited because he was not given specific notice of the possibility of forfeiture of his street time upon revocation. This claim has no merit. Notice of the possibility of forfeiture of street time is not necessary under the D.C. Code. Rather forfeiture of street time upon revocation is required by

12

D.C. Code § 24-406.  Furthermore, the D.C. Court of Appeals has found even where a parolee is informed that he would be granted street time, the retroactive forfeiture of street time is permissible.  See Davis v. Moore, supra, 772 A.2d at 209; Wade v. Figueroa, supra, 2005 WL 1155041 at *4; see also Wells v. United States, 802 A.2d 352, 354 (D.C. 2002) (petitioner not entitled to 25 months of street credit when he was mistakenly released on parole because officials failed to properly lodge violator warrant as a detainer).  Therefore, the petitioner's claim to street time credit because he was not given notice that his street time would be forfeited upon revocation fails.[6]

The petitioner also argues that his street time cannot be forfeited because several of his prior parole violations were administrative, rather than criminal in nature.  This claim has no merit because the nature of parole violations by D.C. Code parolees is irrelevant to the forfeiture of street time.  The law is clear - whenever a D.C. parolee has his parole revoked, the parolee forfeits the time he has spent on parole.  See Noble, supra; D.C. Code § 24-406(a).  In his petition, the petitioner cites to federal regulations for U.S. Code parolees.  See Petition at pp. 3-4.  The Commission's regulation at 28 C.F.R. § 2.52(c), regarding street time credit for U.S. Code parolees, does permit "street time" credit in some circumstances for U.S. Code parolees.  However, this regulation is inapplicable to the petitioner, as he is a D.C. Code parolee.  In

---

[6]Likewise, the petitioner's claim that he was entitled to specific notice that his good time would be forfeited upon revocation also fails.  The D.C. Code does not require this specific notice but, instead, requires automatic forfeiture of good time upon revocation of parole.  See D.C. Code § 24-406.  Wolff v. McDonnell, 94 S.Ct. 2963 (1974), and Morrissey v. Brewer, 408 U.S. 471 (1972), cited by the petitioner, set forth the procedural due process safeguards for a disciplinary and revocation proceedings which includes notice of the alleged violations but did not require notice as to the consequences, such as forfeiture of good time credit or street time, of an adverse finding.

accordance with Noble, the Commission's regulation for D.C. parolees does not permit street credit in any circumstances. See 28 C.F.R. § 2.105(d). Accordingly, the petitioner's claim to entitlement of street time credit because of the nature of his parole violations has no merit.[7]

Therefore, the U.S. Parole Commission correctly forfeited all of the time the petitioner spent on parole supervision ("street time") when it previously revoked his parole and properly extended the petitioner's full term date to January 14, 2009.

### III.     Petitioner Has Been Awarded All Of The Sentence Credit That He Is Due

---

[7]The petitioner also appears to challenges the Commission's authority and jurisdiction to revoke his parole and forfeit his street time because the Commission is not an Article III court with judicial power.

The constitutional authority of a parole agency to detain a parolee, and to return the parolee to prison upon an order revoking parole, is well established. See Morrissey v. Brewer, 408 U. S. 471, 478-80, 485-89 (1972). See also United States v. Addonizio, 442 U.S. 178, 188 (1979) ("The decision as to when a lawfully sentenced defendant shall actually be released has been committed . . . to the discretion of the Parole Commission").  A parole agency's exercise of its authority does not violate the separation of powers doctrine and does not unconstitutionally infringe on a judicial function. See Simpson v. Ortiz, 995 F.2d 606, 610-11 (5th Cir.) (Parole Commission did not violate doctrine of separation of powers by establishing parole eligibility guidelines), cert. denied, 510 U.S. 983 (1993);  Geraghty v. U. S. Parole Comm'n, 719 F.2d 1199, 1211-12 (3rd Cir. 1983)(Commission does not perform a "judicial function" when it grants and denies parole), cert. denied, 465 U.S. 1103 (1984);  Artez v. Mulcrone, 673 F.2d 1169, 1170 (10th Cir. 1982) (federal parole statute is not an unconstitutional delegation of judicial power and does not usurp the judicial function;  "[i]n granting or denying parole, the Parole Commission does not modify a trial court's sentence, but merely determines whether the individual will serve the sentence inside or outside the prison walls").  Because revocation of parole is not a new criminal prosecution in any sense, see Maddox v. Elzie, 238 F.3d 437, 443 (D.C. Cir.), cert. denied, 534 U.S. 836 (2001); cf. id. at 445 ("Morrissey, [supra,] makes clear that parole revocation is not the continuation of a criminal trial but a separate administrative proceeding at which the parolee does not possess the same rights as a criminal defendant at trial.") (emphasis added), the Commission does not usurp Article III powers when it revokes a released prisoner's parole. Moreover, the Commission exercises plenary authority over D.C. Code prisoners and parolees pursuant to National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33, 111 Stat. 712 (1997) ("Revitalization Act"). See D.C. Code § 24-131 (a) (2001); Pate v. United States, 277 F. Supp.2d 1, 3 n. 2 (D.D.C. 2003). Therefore, there is no merit to the petitioner's claim that the Commission lacked the authority to revoke his parole and forfeit his street time.

Finally, the petitioner contends that he has not received credit for all of his time spent in custody. The petitioner claims that he was in custody serving his sentence in F14226-89, from Dec. 8, 2001 to May 8, 2003. See Petition, ¶ 5.[8] However, as the records make clear, the petitioner was serving his sentence in his Virginia larceny conviction from December 8, 2001 until his parole violator warrant was executed on November 23, 2002. See Exhibit P and Q. Thus, the petitioner began service of his F14226-89 sentence when his parole violator warrant was executed on November 23, 2002 and continued until he was paroled on May 8, 2003. The petitioner is not entitled to any sentence credit from December 8, 2001 until November 23, 2002, the time the parole violator warrant was executed. 28 C.F.R. § 2.105(d) provides "[p]ursuant to D.C. Code 24-406(a), a parolee whose parole is revoked by the Commission shall receive no credit toward his sentence for time spent on parole, including any time spent in confinement on any other sentence (or in a halfway house as a condition of parole) prior to the execution of the Commission's warrant." (emphasis added). Custody that counts towards the service of another sentence does not count towards completion of his F14226-89 sentence. See 28 C.F.R. § 2.100(d)(2); Ali v. District of Columbia, 612 A.2d 228, 230 (D.C. 1992) (periods of pretrial incarceration may not be credited to sentence received for new offense if defendant was serving sentence in another case during that time period).

The petitioner may be confusing sentence credit with "re-parole credit." When the Commission makes a re-parole decision following revocation of parole, time served on another

---

[8]The petitioner has been given credit for the other times noted in paragraph 5 of his petition. Specifically, the Bureau of Prisons has given the petitioner sentence credit for the following periods of time resulting in his current full term date of January 14, 2009: 12/14/89; 12/18/89 to 8/18/93; 10/31/94 to 3/18/97; 3/11/99 to 10/19/00; 11/8/02 to 11/22/02; 11/23/02 to 5/8/03; 2/9/04 to 10/9/04. See Exhibit A.

sentence will be taken into consideration when computing the reparole guidelines (i.e., the amount of time he should further remain in custody). See 28 C.F.R. § 2.81(a), incorporating 28 C.F.R. § 2.21(a). Thus, the petitioner simply erroneously believes that he is entitled to sentence credit for the time he spent in custody on other sentences.[9]

Accordingly, as the petitioner has been awarded all of the sentence credit to which he is entitled in F14226-89, this claim must be denied.

## CONCLUSION

Accordingly, given that good time credits do not reduce a sentence, that good time credits and street time are properly forfeited upon revocation of parole, and given that the petitioner has been awarded all of the sentence credit to which he is entitled, the petitioner's challenge to his full term date is without merit and his petition for a writ of habeas corpus should be summarily denied.

---

[9]Likewise, the petitioner asserts that he did not receive sentence credit for the time he was in custody from July 21, 1994 to October 21, 1994 (Petition at ¶ 12) , but the procedural history makes clear the petitioner was on parole in F14226-89 during that time period. See Exhibits C and D. To the extent that the petitioner was in custody on other criminal charges which resulted in conviction, as was the case with the petitioner's 1994 conviction in Arlington, Virginia for larceny, failure to appear and receiving stolen property, this time in custody on other criminal charges would not be credited towards completion of his F14226-89 sentence. See Exhibit Z at p. 2 and Exhibit BB at p. 4 (NCIC printout).

The petitioner also claims that he was in custody from November 18, 1998 to May 21, 1999. Petition at ¶ 12. Again, the petitioner was on parole on November 18, 1998, the parole violator warrant was not executed until March 11, 1999, and he was serving time for a conviction in Alexandria, Virginia for possession of cocaine.  See Exhibit G, Exhibit H at p. 4, Exhibit Z at p. 2, and Exhibit BB at p. 5. Any time prior to the execution of the parole warrant on March 11, 1999 would not be credited to completion of his F14226-89 sentence. See 28 C.F.R. §§ 2.100(d)(2), 2.105(d). The petitioner has been given sentence credit from March 11, 1999 until October 19, 2000, the date of his next parole. See Exhibit A at p. 10. In sum, because the petitioner is not entitled to credit towards his F14226-89 sentence for the periods of time in which he was in custody and serving a sentence in other criminal cases, there is no merit to the petitioner's claim that he has not received all of the sentence credit to which he is entitled.

A proposed order is attached.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar Number 451-058

_____
ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Section
D.C. Bar Number 457-078

_____
SHERRI L. BERTHRONG
Assistant United States Attorney
Special Proceedings Section
D.C. Bar No. 249-136
Sherri.Berthrong@usdoj.gov
555 4th Street, N.W., Room 10-450
Washington, D.C. 20530
(202) 514-6948

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the Federal Respondents' Opposition has been electronically filed with the Court and served by mail upon the petitioner, Kenneth Ray Sanders, Fed. Reg. No. 08480-007, CI Rivers, Correctional Institution, P.O. Box 630, Winton, North Carolina, 27986, this 1st day of December, 2005.

_____
Sherri L. Berthrong
Assistant United States Attorney