# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

KENNETH RAY SANDERS,            )
            )
       Petitioner,        )
            )
      v.               )       **Civil Action No.  05-2003 (RWR)**
            )
U.S. PAROLE COMMISSION, et al.,    )
            )
       Respondents.      )
_____)

## MEMORANDUM OPINION

Petitioner was convicted under the District of Columbia Code and is serving a parole violator term.  He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the actions of the United States Parole Commission ("Parole Commission").  Because the record demonstrates that the Parole Commission correctly applied the law and did not violate petitioner's constitutional rights, the petition for a writ of habeas corpus will be denied.

## BACKGROUND

On April 6, 1990, in the Superior Court of the District of Columbia, petitioner was sentenced to a term of 4 to 12 years imprisonment for the offenses of second degree burglary, attempted first degree theft, and destruction of property.  Federal Respondents' Opposition to Petition for Writ of  Habeas Corpus ("Resp'ts' Opp'n"),  Ex. B.  The District of Columbia Board of Parole ("D.C. Board") granted petitioner parole on August 18, 1993, and required that petitioner remain on parole until December 18, 2001.  *Id.*, Ex. C.

On February 1, 1995, the D.C. Board revoked petitioner's parole based on his failure to comply with the directions of his parole officer, illegal use of a controlled substance, and failure to  participate in an outpatient drug rehabilitation program. *Id.*, Ex. E.  The D.C. Board also ordered that petitioner be reparoled on July 31, 1995. *Id.*  On December 26, 1995, petitioner's reparole date was rescinded by the D.C. Board because petitioner had engaged in repeated or extremely serious negative institutional behavior. *Id.*, Ex. F.  The D.C. Board ordered that petitioner be considered for reparole by July 29, 1996. *Id.*

Petitioner was reparoled on March 18, 1997, and ordered by the D.C. Board to remain on parole until March 21, 2002. *Id.*, Ex. G.  On April 7, 1999, the D.C. Board revoked petitioner's parole for his illegal use of a controlled substance, failure to comply with the instructions of his parole officer, and failure to report to the parole officer as directed. *Id.*, Ex. I.  The D.C. Board ordered that petitioner be considered for reparole by September 11, 1999.

As part of the National Capital Revitalization and Self-Government Improvement Act of 1997, parole authority over D.C. Code offenders was transferred from the D.C. Board to the Parole Commission. *See* D.C. Code § 24-131; *see also Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998).  On February 3, 2000, the Parole Commission held a rehearing on the D.C. Board's revocation decision.  Resp'ts' Opp'n, Ex. J.  The Parole Commission ordered that petitioner be reparoled on August 10, 2000, after serving 17 months. *Id.*, Ex. K. The Parole Commission subsequently delayed petitioner's parole date for 70 days because petitioner had not developed a release plan as is required by 28 C.F.R. § 2.82 (2005).  Resp'ts' Opp'n, Ex. L.  On October 19, 2000, petitioner was released on parole, and the Parole Commission ordered that he remain under parole supervision until February 22, 2005. *Id.*, Ex. M.

The Parole Commission issued a parole violator warrant against petitioner on May 9, 2002. *Id.*, Ex. N. The warrant was based on petitioner's failure to comply with the parole condition that he participate in drug treatment and because petitioner failed to report a change of residence to his parole officer. *Id.* On July 18, 2002, the Parole Commission supplemented its violator warrant to include petitioner's conviction in Arlington County, Virginia for the offense of felony concealment. *Id.*, Ex. Q. Petitioner's parole was revoked on March 12, 2003. *Id.*, Ex. S. The Parole Commission ordered that petitioner be paroled after serving 17 months and that petitioner not receive any credit for the time he had spent on parole. *Id.* Petitioner was paroled on May 8, 2003, and ordered by the Parole Commission to remain under parole supervision until July 11, 2007. *Id.*, Ex. T.

On March 29, 2004, petitioner's parole was revoked based on his failure to report to his parole officer as directed and because petitioner had violated the law by aggressive panhandling. *Id.*, Ex. W. The Parole Commission ordered that petitioner be paroled on October 9, 2004, after the service of eight months. *Id.* Upon his release on parole, the Parole Commission ordered that petitioner remain under parole supervision until April 12, 2008. *Id.*, Ex. X.

After finding that petitioner failed to submit to drug testing, violated the special condition that he reside in a halfway house, and failed to report to his parole officer as directed, the Parole Commission revoked petitioner's parole on September 12, 2005. *Id.* The Parole Commission also stated that petitioner's presumptive reparole date was July 12, 2006, after the service of 12 months. *Id.* Petitioner is currently serving that parole violator sentence.

<u>DISCUSSION</u>

Petitioner claims that the Parole Commission's actions have resulted in a miscalculation of his sentence. First, he contends that the Parole Commission has erroneously deprived him of

his statutory good time credits under the D.C. Code, and that he was deprived of these credits without due process.  Petitioner also challenges the Parole Commission's forfeiture of his "street time" as a violation of the *Ex Post Facto* Clause of the Constitution.  He further claims that federal regulations do not allow street time forfeiture for the parole violation of failure to report to his parole officer.

I.      Good Time Credits

Petitioner contends that the Parole Commission miscalculated the good time credits that he earned while incarcerated.  He argues that at the time that he committed his underlying offenses of conviction, D.C. Code violators were entitled to a 35% reduction in their sentences and that because of the Parole Commission's action he is serving a sentence beyond that authorized when he was committed the offenses.

The District of Columbia law in effect at the time petitioner committed his offenses, and applied by the D.C. Board and the Parole Commission, provided that good-time credits are "applied to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole is mandatory."  D.C. Code § 24-221.01(formerly § 24-429.1).  The statute means that once the minimum sentence, less good time, is served, an inmate is eligible for parole, and when the maximum sentence, less good time, has been served, an inmate has reached his mandatory release date.  *Murray v. Stempson*, 633 A.2d 48, 49-50 (D.C. 1993).  Thus, the statute applies only to parole eligibility and mandatory parole dates.  There is no mention in this statute as to its application to an inmate's full-term date, namely, the date on which the maximum term for which he was sentenced would be reached.  Instead, another statute provides that while on parole, a prisoner remains in the custody of the Attorney General of the United States "until the

expiration of the maximum of the term or terms specified in the sentence *without regard to good time allowance*." D.C. Code § 24-404(formerly § 24-204)(emphasis supplied).   In petitioner's case, his full-term date is January 14, 2009.  *See* Resp'ts' Opp'n, Ex. A.

Since petitioner's parole was revoked, he must "serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him *after his return to custody*." D.C. Code § 24-406(formerly § 24-206)(emphasis supplied).  Under this statute, petitioner is eligible for good-time credits for the time he is now serving on his parole revocation term.

Petitioner has not identified how the Parole Commission misapplied these statutes or established that he has been subject to additional punishment in violation of his constitutional rights.   His claim, therefore, is without merit.

Petitioner also alleges that he was deprived of his statutory good time credits without the benefit of due process.  The Supreme Court has stated that the Constitution itself does not guarantee prisoners good-time credits.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, a liberty interest may arise from an expectation or interest created by state law.  *Id.*; *Wilkinson v. Austin*, -- U.S. -- ,125 S.Ct. 2384, 2393 (2005).   If such an interest is present, a prisoner is entitled to the minimum requirements of procedural due process before being deprived of his good time credits. *Wolff*, 418 U.S. at 558.   Since the District of Columbia has enacted a statute granting good time credits and forfeiting them upon a parole revocation, petitioner has a recognizable liberty interest.

To comply with the minimum requirements of due process, a parole revocation requires (1) written notice of the claimed violations;  (2) disclosure to the parolee of the evidence against him; (3) the opportunity to be heard in person and present witnesses and documentary evidence;

(4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).  Petitioner does not allege that he was deprived of due process at his parole revocation hearing.  And the due process required for the deprivation of good time credits does not encompass "the full panoply of rights" required by *Morrissey*.  *Wolff*, 418 U.S. at 556.  Furthermore, as the Court of Appeals has observed:

> Because [petitioner] had a liberty interest in remaining on parole, and the parole revocation procedures required under *Morrissey* and provided to [petitioner] are more extensive than those required under *Wolff* for revocation of good time credits, ... [petitioner]'s loss of good time credits could not have violated the requirements of due process.

*Duckett v. Quick*, 282 F.3d 844, 849 (D.C. Cir.), *cert. denied*, 537 U.S. 863 (2002).

That same principle applies here.  In the petitioner's parole revocation proceeding, the Parole Commission informed him of the alleged violations and offered petitioner an expedited revocation proposal.  *See* Resp'ts' Opp'n, Ex. Z.  Petitioner was informed of his right to an in-person revocation hearing.  *Id.*  In exchange for petitioner waiving this right and accepting responsibility for violating parole, the Parole Commission offered a revocation sentence of 12 months.  *Id.*  Petitioner accepted this proposal.  *Id.*  Given these facts, petitioner received due process in his revocation proceeding and, therefore, was not unconstitutionally deprived of his good time credits.

II.   Forfeiture of Time Spent on Parole

The *Ex Post Facto* Clause prohibits retroactive application of a law which increases the punishment for a crime that an individual has already committed.  *Collins v. Youngblood*, 497 U.S. 37, 42 (1990).  A statute retroactively increasing the penalties upon parole revocation also

would be unconstitutional.  *Johnson v. United States*, 529 U.S. 694, 701 (2000).   The same principle applies to an administrative regulation promulgated pursuant to statutory authority.  The "controlling inquiry" is whether retroactive application of the change in a parole regulation creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Garner v. Jones*, 529 U.S. 244, 250 (2000).

Petitioner contends that the forfeiture of his street time by the Parole Commission violated the *Ex Post Facto* Clause of the Constitution and extended his sentence beyond the maximum under the law.  Petitioner's claim arises from decisions of the District of Columbia Court of Appeals resolving an apparent conflict between two District of Columbia statutes and the interpretation of those statutes by the District of Columbia Department of Corrections.   The two statutes at issue posed an apparent conflict on the issue of street time forfeiture following a parole revocation.  One statute, enacted in 1932, provided that "[i]f the order of parole shall be revoked ... [t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." D.C. Code § 24-206(a).  In 1987, the District of Columbia enacted a statute that appeared to grant street time credit to parole offenders: "Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was  imposed."  D.C. Code § 24-431(a).

After being advised by Corporation Counsel that the latter statute repealed the former, the D.C. Department of Corrections promulgated a regulation providing that parole revocation would not result in the loss of street time toward service of the sentence for which parole has been granted.  *See Davis v. Moore*, 772 A.2d 204, 209 (D.C. 2001).  That regulation was invalidated by the decision in *United States Parole Comm'n v. Noble*, 693 A.2d 1084 (D.C. 1997).  In that

case, the District of Columbia Court of Appeals held that the law enacted in 1932 providing for loss of street time upon parole revocation was not repealed by the statute enacted in 1987. *Id.* at 1095. As a result, because the agency had erroneously granted street time credit, the Department of Corrections was required to change its method of computing a person's sentence. *Davis*, 772 A.2d at 208. The District of Columbia Court of Appeals ruled, in a subsequent decision, that *Noble* was retroactive and therefore applied to persons who committed their offenses before the issuance of the *Noble* decision. *See id.* at 215.

Petitioner's street time was forfeited because of a judicial decision invalidating a policy of the D.C. Department of Corrections. A judicial construction of a statute is "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311-12 (1994). However, an unforeseeable interpretation of a statute, if applied retroactively, that increases punishment violates due process. *Bouie v. City of Columbia*, 378 U.S. 347, 353-54 (1964). A judicial construction of a statute is not foreseeable if it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." *Id.* at 354.

The decision of the D.C. Court of Appeals in *Noble* was not so unforeseeable as to amount to a due process violation. First, the D.C. statute that required the forfeiture of street time had never been repealed. *See Davis*, 772 A.2d at 216. Moreover, petitioner was on notice that at the time the Department of Corrections implemented its policy that the United States Parole Commission took a contrary view of D.C. law and continued to forfeit street time upon revocation of parole. *Id.* at 209; *see also Johnson v. Kindt*, 158 F.3d 1060, 1063 (10th Cir. 1998)(interpreting *Noble*), *cert. denied*, 525 U.S. 1075 (1999). And at the time petitioner violated his parole, the only judicial decision that had addressed the issue found that the D.C.

statute providing for the forfeiture of street time had not been repealed by the subsequent D.C.

statute and the Department of Corrections policy. *See Tyler v. United States,* 929 F.2d 451, 457

(9th Cir.), *cert. denied*, 502 U.S. 845 (1991). For these reasons, the invalidation of the D.C.

Department of Corrections' statutory interpretation did not violate the *Ex Post Facto* Clause. *See*

*Davis,* 772 A.2d at 215-16; *accord McQueen v. United States Parole Comm'n*, 2005 WL 913151,

at *2 (D.D.C, Apr. 19, 2005); *Simmons v. United States Parole Comm'n*, 2005 WL 758268, at

*1-2 (D.D.C. Apr. 1, 2005); *Wade v. Figueroa,* 2005 WL 607974, at *2 (D.D.C. Mar. 15, 2005).

Petitioner also argues that the Parole Commission should not have forfeited his street

time because some of his parole revocations were based on administrative violations, i.e. failures

to report to his parole officer. He contends that 28 C.F.R. § 2.52 (2005) requires that he be

credited the time spent on parole prior to his failure to report.

The federal regulation cited by petitioner is inapplicable to him. That regulation applies

to those convicted under the United States Code. D.C. Code offenders whose parole has been

revoked are not entitled to street time credit under any circumstances. *See* 28 C.F.R. § 2.105(d)

(2005).

## CONCLUSION

The Parole Commission did not violate petitioner's constitutional rights when it revoked

his parole, and it has not miscalculated petitioner's sentence. Therefore, the petition for a writ of

habeas corpus will be denied. A separate order accompanies this Memorandum Opinion.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge

DATE:  February 28, 2006